THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CEASAR MIDDLETON, Defendant-Appellant.

First District (4th Division)   No. 62374

Opinion filed November 17, 1976.

Elliot Samuels, of Samuels & Weininger, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Patrick W. O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Ceasar Middleton, was arrested on February 28, 1975 and charged with the following offenses: theft of services (Ill. Rev. Stat. 1973, ch. 38, par. 16—3(a)), unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)), criminal damage to property (Ill. Rev. Stat. 1973, ch. 38, par. 21—1(a), and aggravated assault (Ill. Rev. Stat. 1973, ch. 38, par. 12—2(a)(1)). On May 15, 1975, the defendant received a bench trial in the First Municipal District of the Circuit Court of Cook County, and was found guilty of all of the above charges. He was fined $45 for criminal damage to property and theft of services, and was sentenced to concurrent 6 months terms to be served in the House of Correction for unlawful use of weapons and aggravated assault. Mr. Middleton appeals.

The issues presented for review are: (1) whether the defendant waived his right to raise on appeal the question of his jury waiver by his failure to make a post-trial motion for new trial; (2) whether the defendant made an understanding jury waiver; (3) whether the complaints charging the defendant with theft of services and criminal damage to property sufficiently state offenses where the alleged victim is identified as the "Checker Cab Co."; (4) whether the defendant was proved guilty of the offense of theft of services beyond a reasonable doubt; (5) whether the defendant was properly convicted and sentenced on all four of the charges; and (6) whether the sentence imposed upon the defendant is excessive.

The record reveals the facts involved to be as follows. The complainant, Lathan Lowery, a driver for the Checker Cab Company, picked up a passenger whom he later identified as the defendant. Mr. Lowery testified that the involved vehicle is owned by the company and that he is its "agent." The defendant entered the cab at Halsted and Lake Streets in Chicago and gave his destination as 7000 on Normal. According to Lowery, the defendant never advised him that the cab's meter was not running. The driver testified that some friends of his had asked him to take Mr. Middleton home, and told him that they knew Middleton. Lowery stated that the defendant slept during the journey and he guessed that the defendant was intoxicated. The cab proceeded to 7000 South Normal where Lowery stopped the cab and told the defendant that the fare was $5.30. The defendant then "threw" $4 into the front of the cab. Lowery informed him that this was not a full payment. The cab driver turned to look around and saw that the defendant was getting out of the cab and had a pistol in his hand. The complainant testified that the gun was pointed towards him. He asked Mr. Middleton, "What are you doing?" The defendant responded, "I ought to kill you." Lowery asked, "For what?" The defendant then exited the cab and proceeded to walk

away. The driver advised the defendant that if he refused to pay his fare the police would be called. The defendant then began firing bullets at the vehicle in which the driver was seated. Lowery "pulled off" after the first shot. He testified that the cab was hit by bullets three times and that he heard three shots. Mr. Lowery first viewed the bullet holes in the cab when he stopped the police several minutes after the incident and showed them the damage.

The defendant related that he was picked up at Lake and Halsted Streets on the evening in question by a cab driven by Lathan Lowery, and taken to 7000 South Normal. According to the defendant, the cab's meter was not operating at any time during the ride. When the cab arrived at the Normal address and Lowery told him that the fare was $5.30, the defendant replied, "No, Mr. Lowery, I know how much it is. It is $4.80." He then informed Lowery that he had only $4.80 in change, but that he also had a $50 bill; he asked the driver if he could change the bill. When Lowery said that he had no change, the defendant offered, "I could owe you 20 cents." Lowery then began "getting loud," so the defendant said, "Forget about it. I will give your friend the other change." He then paid Lowery the $4.80. The defendant testified that he did not have a weapon in his hand when he exited the cab, and that at no time while he was in the cab was there a weapon on his person. A gun owned by the defendant was later confiscated from his person and was produced at trial. The defendant stated that at the time of the incident, the weapon was laying on his dresser in his home and that he had last seen the gun at "5:30 that Friday morning when I left and went to work and I didn't see it until I came home that night." The defendant's statements regarding the whereabouts of his gun were corroborated by the testimony of his wife, Martha Middleton.

When quesioned as to whether or not he had observed the condition of the cab at the time he entered the vehicle, the defendant replied, "Well, I seen him at the tavern." He then stated that he had been unable to observe the condition of the cab because it was night and he was not paying attention to the vehicle.

Officer James Green, one of the arresting officers, testified that on February 28, 1975, at approximately 6:40 p.m., he and his partner had stopped at a traffic light and were facing westbound on 71st Street at Normal. At that time, the officers heard several shots being fired. The noise came from somewhere north of the officers' location. The police car then made a right turn and headed north on Normal. They had proceeded for less than half a block before they were stopped by a "Checker Cab driver," later identified as Lathan Lowery. He told the officers what had occurred, gave them a description of his passenger, and pointed out the building that the defendant had entered. It was a corner two-flat building

with a common stairway which led past the main door into a hallway, and then to the first and second floor apartments. Officer Green stated that he proceeded up the stairs and entered the hallway. He then saw the defendant standing on the stairs leading to the second floor apartment, holding a gun in his hand. The officer identified himself to the defendant and proceeded to disarm him. Green examined the revolver, discovering three spent and two unspent cartridges inside the weapon. An additional three unspent cartridges were found in the defendant's pocket. The defendant, who was "screaming and hollering" was then arrested.

Following the apprehension of Mr. Middleton, Officer Green first examined the condition of the cab. He stated that at that time, he observed three "bullet dents" on the cab, "[o]ne on the passenger door and two on the rear door." It was the officer's opinion that the dents had been caused by shots being fired at the cab, and that "[t]he dents appeared to look fresh because the paint section was all gone, and the metal was hanging." The officer admitted, however, that he could not be certain how long the dents had been in the cab.

The defendant denied that he ever fired his weapon at the cab or that the gun was in his possession at any time when he was outside of his apartment. According to the defendant, he had entered his apartment and was removing his clothing when he heard a commotion in the hallway. He heard an officer say, "Throw it down. Throw your gun down. I know you got one upstairs there and the best thing to do is throw it down." The defendant threw his gun outside of the apartment and went downstairs with his hands on his head where he was then arrested.

Mrs. Middleton testified that she heard the doorbell ring and that the lady on the first floor must have opened the main door for the police. The police then came into the stairway that led to the Middletons' second floor apartment. At this time, the defendant was " * * * standing in the stairway of the door." She stated, "After they told him to throw the gun down, I told him to go down and throw it down." Mrs. Middleton maintained that prior to this time her husband had been inside of the apartment.

■■■ The defendant argues on appeal that he did not knowingly and intelligently waive his constitutional right to a jury trial, and that it was reversible error for the trial court to enter a jury waiver under the circumstances. The defendant requests that the convictions be reversed and the case remanded for a new trial. The State contends that the defendant waived his right to raise on appeal the question of whether or not his jury waiver was understandingly made, by his failure to make a post-trial motion for new trial. We must agree with the State.

In *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, the Illinois Supreme Court held the law to be as follows: "Failure to raise an

issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review." The defendant in *Pickett* made a written motion for new trial, but failed therein to mention specific issues objected to on review. We notice that issues of constitutional magnitude were before the supreme court in *Pickett*. The defendant therein argued that he had been denied his constitutional right to poll the jury and his right to counsel at a critical stage of the trial proceedings. The supreme court held that the general waiver rule " * * * applied to constitutional quesions as well as to other issues." Under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615), a reviewing court may in its discretion consider issues not properly preserved for review, where a defendant was denied a fair and impartial trial. However, Rule 615(a) " * * * does not mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court." *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

The waiver rule of *Pickett* has been consistently followed by the Illinois courts. (*People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *People v. Free* (1976), 37 Ill. App. 3d 1050, 1051, 347 N.E.2d 505; *People v. Sheppard* (1974), 20 Ill. App. 3d 1036, 1038, 313 N.E.2d 287.) In *Sheppard*, where the defendant remained totally silent as his counsel moved to proceed to a bench trial, counsel's waiver was determined to be binding upon the defendant. The Illinois Appellate Court for the Fourth District specifically held: "Defendant's failure to raise the alleged impropriety of his jury waiver in his post-trial motion constitutes a waiver of that issue."

■■ In the instant case, the defendant denies that he made an understanding jury waiver, and asserts on appeal that it was therefore reversible error for the trial court to proceed to a bench trial. However, the defendant did not raise this issue in the trial court by entering a timely motion for new trial. We find that the defendant has waived the issue of the quality of his jury waiver for purposes of appeal. The record affirmatively shows that the court asked the defendant personally if he was waiving a jury trial, and both he and his retained counsel answered in the affirmative. It is not apparent that the defendant's right to receive a fair and impartial trial was in any way prejudiced by the actions of the trial court. We therefore find it unnecessary to consider whether or not the defendant's jury waiver was constitutionally adequate.

The appellant next argues that the complaints charging him with the offenses of criminal damage to property and theft of services are void for failure to properly identify a victim or injured party, where such complaints allege that the victim of these offenses was "Checker Cab Co."

A person commits the offense of theft of services under section 16—3(a)

of the Criminal Code "* * * when he obtains the temporary use of property, labor, or services of another * * *." The offense of criminal damage to property under section 21—1 is committed when a person "* * * knowingly damages any property of another without his consent * * *." The term "another" is defined by the Code to be "* * * a person or persons as defined in this Code other than the offender * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 2—3.) The term "person" is defined as "* * * an individual, public or private corporation, government, partnership, or unincorporated association." (Ill. Rev. Stat. 1973, ch. 38, par. 2—15.) According to the defendant, "Checker Cab Co." is not a person, as defined by statute, and therefore is not an entity capable of being a victim of the offenses charged. He contends that reversal of the convictions on the damage to property and theft charges is warranted because the State failed to raise essential allegations in the pleadings and failed to meet elements of proof essential to these offenses. The defendant cites *People v. Tenen* (1971), 132 Ill. App. 2d 786, 270 N.E.2d 179, as authority for his position. We find the defendant's argument to be without merit.

In *Tenen*, the defendant's conviction for deceptive practice was reversed. The involved complaint alleged that the defendant had issued "bad" checks with the intent to defraud "Sully House Fine Furniture, 8820 W. Dempster." In reversing the conviction, the court stated: "The designation at bar is not of a person as defined by statute, nor is it of an individual, partnership, or unincorporated association. It is not an entity capable of owning or possessing property or of being defrauded." *People v. Tenen* (1971), 132 Ill. App. 2d 786, 788-89, 270 N.E.2d 179.

We believe that the complaint in *Tenen* can be distinguished from the complaints at bar, in that the instant complaints do not designate an entity incapable of owning or possessing property as a victim. The complaints charging Mr. Middleton with criminal damage to property and theft of services identify the alleged victim as being the "Checker Cab Co." In *People v. Lewis* (1973), 13 Ill. App. 3d 688, 689-90, 301 N.E.2d 159, this court held that a complaint which alleged that the involved goods "* * * were 'the property of Sears Roebuck and Company' * * *," sufficiently designated the complainant therein as a corporate entity capable of owning property. It was stated in that opinion: "The use of the word 'company' under Section 9 of the Business Corporation Act, Ill. Rev. Stat. 1969, ch. 32, par. 157.9(a), connotes corporate existence."

■■ We find that the abbreviation of the word "company" as it was employed in the instant complaints, adequately averred the corporate status of the "Checker Cab Co." Section 9(a) provides that a corporate name "[s]hall contain, separate and apart from any other word or abbreviation in such name, the word 'corporation', 'company', 'incorporated', or 'limited', or an abbreviation of one of such words." (Ill.

Rev. Stat. 1973, ch. 32, par. 157.9(a).) The testimony of Lathan Lowery that he is an agent of the "Checker Cab Co." and that it owns the cab involved further evidences the corporate existence of the company. (*People v. McAllister* (1975), 31 Ill. App. 3d 825, 828, 334 N.E.2d 885.) The Illinois Appellate Court for the First District stated in *McAllister*: "Where the protections intended for a defendant in a theft case have been satisfied, the conviction should not be overturned because of [a] technical omission." The essential question is whether or not the defendant has been prejudiced by the State's failure to supplement the complaints with evidence of the corporate existence of the alleged victim. (*People v. Mahle* (1974), 57 Ill. 2d 279, 283, 132 N.E.2d 267; *People v. McAllister* (1975), 31 Ill. App. 3d 825, 828, 334 N.E.2d 885.) We do not believe that the defendant was in any way prejudiced by the complaints at issue. The complaints were adequate to sufficiently apprise the defendant of the charges against him.

■■  The court could have taken judicial notice of the corporate status of Checker. Matters susceptible of judicial notice include facts " 'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy.' " (*People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792.) The Illinois Secretary of State has a public record of every domestic corporation which is organized for profit or not for profit and of every foreign corporation which is licensed to do business in this State (Ill. Rev. Stat. 1973, ch. 32, pars. 157.48, 157.66, 157.81, 157.92, 157.107, 157.121, 157.123, 163a29, 163a40, 163a48, 163a59, 163a82, 163a84). This court may take judicial notice of matters shown in public records. *People v. Sims* (1975), 29 Ill. App. 3d 815, 331 N.E.2d 178; *O'Laughlin v. City of Chicago* (1975), 28 Ill. App. 3d 766 n.8, 329 N.E.2d 528 n.8.

The defendant next argues that the evidence failed to establish his guilt of theft of services beyond a reasonable doubt. The defendant asserts that in order to find him guilty of that offense, it was necessary to prove beyond a reasonable doubt that he knowingly and intentionally obtained the services of the cab by deception, without intending to pay for those services. (Ill. Rev. Stat. 1973, ch. 38, par. 16—3(a).) According to the defendant, the State failed to meet the required burden of proof where there was substantial evidence of an honest belief in the mind of the defendant that the correct fare was $4.80, and that he had intended to pay this amount when he obtained the services of the cab. The State maintains that the defendant's knowing commission of theft of services was conclusively proved where the defendant shot at the cab after giving the driver less than full payment. We know of no such presumption.

■■  Intent is a state of mind that may be established by an examination of the circumstances surrounding an event or incident. (*People v. Enright* (1971), 1 Ill. App. 3d 654, 275 N.E.2d 294.) Further

examination of the circumstances in the instant case reveals ample evidence that there was an honest dispute in the mind of the defendant as to what was the correct amount of fare. The defendant consistently indicated that he believed the correct fare to be $4.80; he told this to Lowery at the time of the incident. The defendant testified that he was picked up from a location near his place of employment and taken to his home. It is reasonable to conclude that he may have made this same journey by cab on prior occasions, thus forming a basis for his belief as to the fare on the evening in question. The defendant believed that the fare was $4.80, and he entered the cab with $4.80 in change. Mr. Lowery testified that the defendant angrily threw his money into the front of the cab as payment, after he was told that the fare was $5.30. This evidences that the defendant intended to pay for the services of the cab at the time when he obtained those services. A proof of a state of mind incompatible with the intent to steal, here precludes a conviction of theft of services. The conviction of the defendant for theft of services must be reversed.

■■ The defendant contends that he was improperly convicted and sentenced on four offenses where those offenses arose out of the same incident and course of conduct. The State maintains that the trial court properly convicted and sentenced the defendant on all four charges, and that the offenses arose from distinct acts committed by the defendant, although such acts were closely related in time. According to the defendant, all culpable acts committed by him were nonseverable, in that all such acts were directed towards the accomplishment of the alleged theft and were not independently motivated.

We believe that *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, is dispositive of this issue. In *Lilly*, the supreme court held that a single criminal act will support but one conviction. The court further determined that a defendant should be convicted and sentenced for only the most serious offense arising out of a single act. The defendant in *Lilly* was indicted on a rape count and a count of indecent liberties and was found guilty on both counts. Finding that both counts were based upon a single course of conduct engaged in by the defendant, the court found that it was improper under the circumstances to enter judgment on both verdicts. The court vacated the conviction on the lesser count, that is, the indecent liberties charge, even though no sentence was imposed on that conviction. The court reasoned that mere convictions on multiple counts arising from a single course of conduct would unfairly prejudice a defendant, since "* * * police records, including fingerprint reports, well might carry notations of what will appear to be convictions of separate and unrelated crimes of rape and indecent liberties." (*People v. Lilly* (1974), 56 Ill. 2d 493, 495, 309 N.E.2d 1.) Illinois courts have not waivered in their application of the law as it was established in *Lilly*. (*People v.*

*DePratto* (1976), 36 Ill. App. 3d 338, 342, 343 N.E.2d 628; *People v. Soto* (1975), 35 Ill. App. 3d 166, 341 N.E.2d 107.) The *DePratto* court stated: "It is well established that where the conduct of a defendant results in more than one offense, he can be convicted and sentenced only for one, with the sentence limited to the penalty for the most serious of them; * * *."

In the instant case, the conduct of the defendant which constituted the offense of aggravated assault was not independently motivated or severable from the conduct constituting the offense of criminal damage to property; the conviction on the two offenses cannot stand. (*People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679.) We therefore vacate the conviction of the defendant on the charge of criminal damage to property, and affirm the conviction for aggravated assault.

■■ Finally, we do not agree with the defendant's contention that the concurrent 6 months terms of imprisonment imposed by the trial court are excessive. In view of the aggravated conduct of the defendant, and the serious nature of the offenses involved, we hold that the sentences entered by the trial court are appropriate.

In accordance with the above findings, the convictions and sentences on the offenses of unlawful use of weapons and aggravated assault are affirmed; the convictions for theft of services and criminal damage to property are reversed.

Affirmed in part; reversed in part.

DIERINGER and ADESKO, JJ., concur.