THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN W. GENTRY, Defendant-Appellant.

First District (5th Division)   Nos. 62690, 76-28, 76-29 cons.

Opinion filed May 6, 1977.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and Louis R. Schroeder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of disorderly conduct and resisting arrest in violation of section 193—1(b) of the Chicago Municipal Code (Chicago Municipal Code, ch. 193, §193—1(b)) and section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 31—1). He was fined $200 for disorderly conduct and sentenced to one year in the House of Corrections for resisting arrest. On appeal he contends: (1) he was denied his right to a jury trial, (2) the trial court erred when it denied his motion to exclude two police officers, (3) he was not proved guilty of disorderly conduct beyond a reasonable doubt, and (4) his sentence is excessive.

Defendant was arrested on October 8, 1974, and retained private counsel. On December 27, 1974, he demanded a jury trial and the case was re-assigned to Branch 46, the criminal jury court. After several continuances, defendant was tried on May 1, 1975. Three co-defendants, Jimmie Huffman, Margaret Huffman, and Richard Warmak were tried with defendant, however, their cases are not part of this appeal. Although

the report of proceedings of May 1, 1974, makes no mention of a jury waiver, the common law record states that defendant waived a jury trial. Prior to any testimony, defense counsel requested that two of the arresting officers be excluded from the courtroom, however, the court denied this motion. Thereafter, the following pertinent facts were adduced.

*For the State*

*Michael Cyze, Chicago Police Officer*

On October 8, 1974, at about 11 a.m. he responded to a radio call that a boy had been shot at 608 West 61st Street, Chicago. There, he observed defendant walking with two other men. He approached them, informed them of the shooting, and asked defendant why he was in the neighborhood. Defendant stated in a loud voice that it was none of his "f_____ business" adding, "You police don't do nothing but harass me * * *."

A crowd gathered and he told defendant to leave. However, defendant continued to scream about police harassment. He again asked defendant to stop yelling, but defendant replied "f___ you." Defendant then walked over to Sergeant Gafney, who was seated in a nearby car, and complained to him about Cyze. Gafney, however, informed defendant that Cyze was handling the call and told defendant to speak with him.

By this time about 30 persons had gathered. "Numerous" police were also in the area. He told defendant to either stop causing a disturbance or leave. Defendant replied that he did not have to listen. He then informed defendant he was under arrest and reached for his arm. Defendant pulled away. He again grabbed defendant's arm, however, Margaret Huffman pushed him and Jimmie Huffman jumped on his back. Meanwhile defendant tried to free himself. During the ensuing struggle, Margaret Huffman fell to the ground.

A call for assistance was placed and Officers Murphy and Mildice responded. Following five to six minutes of fighting, the officers arrested defendant, Margaret Huffman, Jimmie Huffman and Richard Warmak.

On cross-examination he stated that defendant "was in the process of committing the act" of disorderly conduct when defendant talked to him and Sergeant Gafney. Defendant also spoke to other persons on the street, but he does not know their names.

*Officer Mildice and Investigator James Murphy, Chicago Police Officers*

When Cyze approached defendant, they were parked in their patrol car 30 to 40 yards down the block. Defendant began screaming and hollering and then walked over and talked with Sergeant Gafney. As defendant walked away from Gafney, Cyze grabbed defendant's arm and a struggle ensued involving defendant, Margaret Huffman and

Jimmie Huffman. They went to assist Cyze. While pulling Jimmie Huffman off of Cyze, several persons who had gathered in the area pulled Mildice from behind. Then Richard Warmak hit Murphy with a two-by-four. Mildice pursued Warmak, but was detained by someone in the crowd before he could apprehend him. Later, he arrested Warmak in an apartment nearby. They estimated that anywhere from 10 to 30 persons were present during the course of the disturbance.

*For defendant*

*Defendant on his own behalf*

He and two friends were returning to his mother's house from a nearby liquor store when they were stopped by Officers Cyze, Mildice and Murphy. Cyze asked him his name and began searching him. Meanwhile, Cyze told his friends to leave. When Cyze finished searching him, he told him to leave also. However, he only walked a few feet before Cyze stopped him and asked him how long he would be in the area. He replied that he would be there all day and Cyze again told him to leave. He then walked over to Sergeant Gafney. There he was joined by his mother, Margaret Huffman. He told Gafney that Cyze had stopped him, cussed him, and threatened to lock him up if he was still in the neighborhood that evening. Gafney assured him he would speak with Cyze. He and his mother began walking away, when Cyze came running up behind them and reached for him. In so doing Cyze pushed his mother who fell, accidentally tripping Cyze. He said nothing to Cyze. Rather he turned and asked Gafney if he would do something. As he spoke Cyze arrested him, pushing him onto the trunk of a car and handcuffing him.

He denied saying anything to Cyze or resisting arrest in any way. Nor did he say anything to the persons who had gathered at the scene. He further denied asking the crowd to gather or requesting their assistance.

*Margaret Huffman on her own behalf*

On October 11, 1974, at about 11 a.m. she was standing on her front porch at 604 West 61st Street. Officer Cyze stopped defendant and two of his friends and talked with them. Defendant did not raise his voice. She walked over to them and Cyze told her "to get the m_____ f_____ hell away" before he put her in jail. Defendant then told Sergeant Gafney that Cyze was harassing him. Gafney said he would talk with Cyze. In addition, Officer Murphy told Cyze to leave defendant alone. She and defendant began walking away, when Cyze pushed her down and fell on top of her. Prior to this Cyze had not told her or defendant they were under arrest. Her husband, Jimmie Huffman, came to help her to her feet and in so doing accidentally pushed Cyze.

Throughout the entire incident none of the defendants struck any of the officers. Nor did defendant, Gentry, raise his voice.

Although she acknowledged on cross-examination that a fight occurred

after defendant was arrested, she insisted on redirect examination that none of the defendants participated in the fight. Nor did the defendants urge others in the crowd to participate.

*Reverend Jimmie Huffman on his own behalf*

He corroborated the testimony of his son, the defendant, and his wife, Margaret Huffman. He, too, stated that defendant did not scream at the officers.

*Richard Warmak on his own behalf*

He denied participating in the disturbance. In fact, except for a few minutes he spent on his porch, he was inside his house throughout the entire incident.

*Aleria and William Warmak*

Margaret Huffman is their mother. Cyze pushed Margaret Huffman and hit Jimmie Huffman. Defendant did not ask the crowd for assistance.

*Johnnie Choutaw*

He was walking with defendant when he was stopped by Cyze. He substantially corroborated defendant's version of what occurred.

OPINION

Defendant first contends he was denied his constitutional right to a jury trial. Citing *People v. McKinney* (1970), 126 Ill. App. 2d 339, 261 N.E.2d 797, for the proposition that the record must reflect that defendant was informed of this right and that he knowingly and intelligently waived it, he argues that the record here fails to establish this.

■■■ Initially, the State argues that defendant has waived this issue on appeal because he failed to file a post-trial motion. (*People v. Middleton* (1976), 43 Ill. App. 3d 1030, 357 N.E.2d 1238.) However, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) allows us to consider plain errors which affect substantial rights, when the evidence is closely balanced. (*People v. Harvey* (1976), 41 Ill. App. 3d 869, 354 N.E.2d 393.) Here, the evidence is totally conflicting and the basic issue before the court is therefore one of credibility. Consequently, the issue of jury waiver is especially important. We will therefore exercise our discretion and review this issue.

■■ ■ It is clear, as defendant suggests, that waiver cannot be presumed from a silent record. (*People v. Rosen* (1970), 128 Ill. App. 2d 82, 261 N.E.2d 488.) However, the record here shows that defendant knowingly waived a jury trial. Although there is no mention of it in the May 1 transcript, the common law record states that defendant waived a jury trial. Where the report of proceedings is silent regarding waiver, but the common law record reflects waiver, the latter is presumed to be correct. (*People v. Feather* (1976), 42 Ill. App. 3d 974, 356 N.E.2d 885.)

Admittedly in *Feather,* unlike here, the common law record also indicated that defendant was advised of his right to a jury trial. However, in light of the fact that defendant had previously demanded a jury trial and the case had been assigned to the jury calendar, defendant was assuredly aware of this right.

Defendant next contends that the trial court erred when it denied his motion to exclude Officers Mildice and Murphy from the courtroom. The State again argues that defendant has waived this issue by failing to file a post trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, as we just noted, because of the conflicting nature of the testimony here, we will consider matters, which although waived, affect credibility. Arguably, allowing all three officers to remain in the courtroom, throughout the entire proceedings affects their credibility. We, therefore, will consider this issue pursuant to Supreme Court Rule 615(a). Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).

■■ The power to exclude witnesses is discretionary with the trial court, and unless there was a clear abuse of discretion it will not be disturbed. (*People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729, *cert. denied,* 355 U.S. 850, 2 L. Ed. 2d 60, 78 S. Ct. 76, *cert. denied,* 358 U.S. 887, 3 L. Ed. 2d 115, 79 S. Ct. 128.) Here, Officer Mildice and Officer Murphy were complaining witnesses against co-defendants Richard Warmak and Jimmie Huffman, respectively. Because both officers were complaining witnesses, there was a reasonable basis for allowing them to remain in the courtroom despite the possibility of collusion or perjury. (*People v. Dixon* (1976), 39 Ill. App. 3d 132, 350 N.E.2d 193.) The court, therefore, did not abuse its discretion in allowing the officers to remain in the courtroom during the proceedings.

Defendant next contends he was not proved guilty of disorderly conduct beyond a reasonable doubt.

Section 193—1(b) of the Municipal Code of the City of Chicago (Chicago Municipal Code, ch. 193, §193—1(b)) provides that:

"A person commits disorderly conduct when he knowingly:

\* \* \*

(b) Does or makes any unreasonable or offensive act, utterance, gesture, or display which under the circumstances, creates a clear and present danger of a breach of peace or an imminent threat of violence; \* \* \*."

■■■ Arguing with a police officer, even if done loudly, will not of itself constitute disorderly conduct. (*People v. Douglas* (1975), 29 Ill. App. 3d 738, 742, 331 N.E.2d 359, 363.) Although this is one factor to be considered, culpability is also dependent upon the surrounding circumstances. (*City of Chicago v. Wender* (1970), 46 Ill. 2d 20, 262 N.E.2d 470.) Thus, this ordinance has been construed to prohibit only that

conduct tending to cause public disorder. *City of Chicago v. Blakemore* (1973), 15 Ill. App. 3d 994, 305 N.E.2d 687.

■■ Contrary to defendant's contention, the City need only prove defendant guilty by a clear preponderance of the evidence in a quasi-criminal proceeding such as this. (*City of Chicago v. Robinson* (1975), 32 Ill. App. 3d 149, 336 N.E.2d 158.) Nevertheless, although there was a disturbance here, no evidence was adduced at trial that defendant's conduct prior to his arrest caused this disturbance.

Viewing the evidence most favorable to the State, it is clear that defendant was argumentative and noisy. However, what effect, if any, these words had upon the crowd is not apparent from the record. The State relies on the subsequent disturbance, as proof that defendant's words precipitated a breach of the peace. However, this disturbance occurred *after* defendant was arrested and involved family and friends of defendant, who were obviously incensed over his arrest. Nothing in the record suggests defendant's conduct prior to this time threatened a breach of the peace. Indeed, immediately prior to defendant's arrest Sergeant Gafney told defendant to direct his complaints to Officer Cyze. Certainly, if the danger of a disturbance was real, Gafney would never have suggested this. We also note that no one called for assistance until the struggle over defendant's arrest occurred, likewise suggesting that the threat of a disturbance did not exist until *after* defendant's arrest.

Nor can we hold defendant accountable for the size of the gathering as the State suggests. According to Cyze "numerous" police were in the area in response to a call that a boy had been shot. A crowd of 20 to 30 onlookers under such circumstances is not unusual. Moreover, abusive language does not evolve into a crime simply because persons standing nearby stop, look and listen. *People v. Douglas* (1975), 29 Ill. App. 3d 738, 742-43, 331 N.E.2d 359, 363.

■■ Finally, defendant contends his sentence is excessive. He first argues and the State agrees that a sentence of one year for resisting arrest, a Class A misdemeanor, exceeds the maximum term allowable by law. Section 5—8—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—3) provides for a "term less than one year * * * " for the majority of Class A misdemeanors, including resisting arrest. We, therefore, must reduce defendant's sentence by one day—to 364 days.

Although this holding brings defendant's sentence within the statutorily proscribed limits, defendant nonetheless argues that the sentence is still excessive, because his arrest resulted from following contradictory instructions given him by police. While this court has the power to reduce a sentence (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)), the trial judge is ordinarily in a better position than we are to make a sound determination as to the punishment to be imposed. Consequently, our Supreme Court

has held that this power should be exercised with considerable caution. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) Here, defendant has a prior record, including two previous convictions for resisting arrest. Given the nature of defendant's offense and his prior record we see no reason to reduce the carefully considered sentence further than necessary to bring it within the limits proscribed by law.

For the foregoing reasons we reverse defendant's conviction for disorderly conduct, affirm his conviction for resisting arrest and reduce his sentence for resisting arrest to 364 days.

Reversed in part; affirmed in part; sentence reduced.

SULLIVAN, P. J. and MEJDA, J., concur.