650 So.2d 214 (1995)
L.A.T., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 93-2508.
District Court of Appeal of Florida, Third District.
February 15, 1995.
*215 Bennett H. Brummer, Public Defender and Robert Kalter, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen. and Lucrecia R. Diaz, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and COPE, JJ.
SCHWARTZ, Chief Judge.
L.A.T. appeals an order finding him delinquent. We reverse.
On March 17, 1993, police officers were dispatched to a Hardee's Restaurant at a shopping center in suburban Dade County where three juveniles had allegedly refused to leave the premises. When the officers arrived, they found L.A.T. and two other juveniles outside. After the officers interviewed them, the juveniles walked away and entered a nearby Publix Supermarket.
After further investigation, the officers arrested one of L.A.T.'s companions[1] inside the supermarket. One of the arresting officers testified:
[L.A.T.] was screaming out in the Publix supermarket, is everybody watching this. Police brutality, Rodney King style. And he continued to do so as I walked the other Defendant  the other individual out of the supermarket all the way toward my squad car.
* * * * * *
Continued to scream at the top of his lungs. Is everybody watching this, police brutality, police brutality, Rodney King style, Rodney King style.
At which time my backup which were Officer Burmeister and Officer Enriquez arrived on the scene.
Q. Okay. And then what happened?
A. By this time we had twenty to twenty five people around them  we had the supermarket  Hardee's. We had a lot of people that are in the same area. And they just gathered around us while they were still screaming out.
Officer Burmeister and Enriquez was trying to calm them down.
* * * * * *
THE WITNESS: He was cursing at all of us. You fucking cops, what the hell do you think you're doing? You are full of bull shit. This is bull shit. This is abuse. Police brutality  look at this people, Rodney King style, Rodney King style.
Another officer testified:
We arrived  upon arrival, we saw a large crowd gathered.
* * * * * *
Q. What did you see when you got to the scene, Officer. When you drove up, what did you see?
A. I observed the defendant along with another defendant yelling and screaming obscenities.
* * * * * *

*216 A. I then told them to calm down and relax.
Q. Okay. What was the Respondent's reaction to you when you told him to calm down and relax?
A. He became angry still, waiving his arms and continued to scream. And there was another obscenity said, I don't recall exactly what [inaudible].
Q. How many people were gathered around during this time?
A. Approximately twenty five. It's ... in a mall. There was a Hardee's, a Winn Dixie and another shopping 
Q. And what were these twenty five people or so  what were these people doing?
A. They were gathered watching and listening.
Q. Then what did you do?
A. After several attempts to calm him down then he refused to  then I told him that he was placed under arrest. That he was going to be placed under arrest.
Q. What were you placing him under arrest for?
A. Disorder.
Q. And why were you placing him under arrest for disorderly conduct?
A. Again he was creating a crowd 
* * * * * *
THE WITNESS: And he continued to yell obscenities and he refused to calm down and keep quiet when I told him to.
MS. DINERO: Okay.
THE WITNESS: He was [inciting] the incident.
* * * * * *
THE COURT: I have one question, Officer. You testified that this Defendant yelled obscenities, what obscenities did you hear this Defendant yell?
* * * * * *
THE WITNESS: Let him go, let him go. This is police brutality, this is Rodney King thing, that's all it is. Man, fuck ya'll.
Another officer testified:
A. As we pulled up we observed Officer Jaramillo on the ground with the  one of the black males and the two other black males standing above the officer chanting obscenities and screaming, creating a scene that was gathered around the officer.
* * * * * *
Q. Do you recall what it was specifically that the Respondent was chanting and screaming?
A. At the time it was making reference to the Rodney King beating. Rodney King, police brutality, Rodney King style and all that. In a very high tone.
* * * * * *
THE WITNESS: Very aggressive and hostile, very loud.
* * * * * *
Q. And what happened?
A. We approached the two gentleman that were screaming and we advised them to please lower their voice. And they were asking us why their friend was being arrested, and we said we can't explain anything until you calm down and relax. And we will let you know what's going on, but please stop screaming and please lower your voices, nothing would happen.
And they didn't do that. They kept screaming and hollering and wouldn't give us an opportunity to explain what the situation was. [e.s.]
Q. What if anything did you specifically say to this  we're only concerned about this Respondent. What if anything did you say to this Respondent, do you recall?
A. Yes. I told him  he was being loud. And I told him to please lower his voice because a crowd was forming, that it was unnecessary. It was nobody business in the surrounding area of what was going on.
And I advised him to please lower his voice because he was creating a scene. *217 There was a possibility that he would be arrested also if he didn't lower his voice. [e.s.]
* * * * * *
Q. Okay. Then what happened?
A. The individual [L.A.T.] didn't lower his voice and we placed him under arrest. [e.s.]
Q. Let me stop you here for a moment. What was he placed under arrest for?
A. Disorderly conduct at the time. We couldn't  we were getting  the scene was getting uncontrollable.
The officers placed L.A.T. under arrest for disorderly conduct. He then resisted arrest, and was charged with that offense as well.
The trial court found that the juvenile had committed the offenses of disorderly conduct and resisting arrest without violence. On this appeal, he argues that his conduct was protected by the First Amendment to the United States Constitution and, accordingly, that he was not guilty of disorderly conduct.[2] We agree. In our judgment, L.A.T. has been punished simply for asserting his right to free speech in what the police considered  and what may well have been  an offensive manner. But the constitution does not permit that result.
As we all know,
[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.
City of Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398, 412-13 (1987); State v. John W., 418 A.2d 1097, 1108 (Me. 1980). L.A.T.'s remarks, which, in so many both well and ill chosen words, called upon passers-by to witness and protest the arrest of his friend, fall squarely within this principle and are therefore constitutionally protected. See Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala. Crim. App. 1984) (defendant became loud and belligerent to investigating officer after accident and shouted "[t]his is some shit... . Damn you; you're just doing this because I'm black. You're bringing us back a hundred years"); Ware v. City & County of Denver, 182 Colo. 177, 177, 511 P.2d 475, 475 (1973) (defendant commented "fuck you" during political speech at university); People v. Justus, 57 Ill. App.3d 164, 167, 14 Ill.Dec. 836, 838, 372 N.E.2d 1115, 1117 (1978) (defendant became hysterical and began yelling and screaming over parking ticket causing crowd to gather); People v. Gentry, 48 Ill. App.3d 900, 902, 6 Ill.Dec. 617, 618, 363 N.E.2d 146, 147 (1977) (defendant stated to officer who asked why he was in neighborhood, that it was none of his "f- business" adding, "[y]ou police don't do nothing but harass me"); Cavazos v. State, 455 N.E.2d 618, 619-20 (Ind. App. 1983) (defendant protested brother's arrest, calling officer "asshole"); State v. John W., 418 A.2d at 1103, 1108 (defendant protested sister's arrest shouting, "[h]ey turn around and come back here ... [h]ey, you fucking pig, you fuckin' kangaroo"); State v. Hampton, 66 Ohio App.3d 30, 31 n. 1, 583 N.E.2d 400, 401 n. 1 (1990) (defendant stated to police officer, "just because you've got a f-badge you think you can f____ with poor people ... f____ you and your gun, money talks so I'll walk"); City of Toledo v. Grince, 48 Ohio App.3d 126, 548 N.E.2d 999 (1989) (derogatory remark that police were ineffective constitutionally protected and did not constitute disorderly conduct); State v. McKenna, 415 A.2d 729, 730 (R.I. 1980) (defendant challenged authority of police to arrest friends threatening to "blow [their] fucking heads off").
It is just as clear that the statements did not fall within the only available exception to the rule of constitutional protectability; that is, because they neither "inflict[ed] injury nor tend[ed] to incite an immediate breach of the peace," they were not "fighting words." Hill, 482 U.S. at 461-62, 107 S.Ct. at 2509-10, 96 L.Ed.2d at 412 (quoting Lewis v. City of New Orleans, 415 U.S. 130, 133, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 219 (1974)). The record shows that while a number of persons gathered at the scene and observed the goings on, L.A.T.'s words neither themselves *218 urged the crowd to respond nor actually had that effect. Specifically, they did not "disturb" or cause anybody to interfere with the arrest or otherwise to breach the peace.[3] A "fighting words" finding is therefore constitutionally unjustified as a matter of law. See Morris v. State, 335 So.2d 1 (Fla. 1976); Gonzalez v. City of Belle Glade, 287 So.2d 669 (Fla. 1973); C.P. v. State, 644 So.2d 600 (Fla. 2d DCA 1994); Harbin v. State, 358 So.2d 856, 857 (Fla. 1st DCA 1978); Ware v. City & County of Denver, 182 Colo. at 177, 511 P.2d at 475; People v. Douglas, 29 Ill. App.3d 738, 742, 331 N.E.2d 359, 363 (1975) (no finding of breach of peace in absence of evidence of effect of defendant's conduct on bystanders); City of Chicago v. Blakemore, 15 Ill. App.3d 994, 305 N.E.2d 687 (1973) (same); Cavazos, 455 N.E.2d at 619-20 (protest of brother's arrest could not reasonably provoke listener to violent action as a matter of law); State v. John W., 418 A.2d at 1108 (protest of sister's arrest not so egregiously offensive to provoke violent response); State v. Hampton, 66 Ohio App.3d at 30, 583 N.E.2d at 400 (defendant's words not likely to provoke average person to immediate retaliatory breach of peace); State v. McKenna, 415 A.2d at 729.
In sum, L.A.T. has been found delinquent simply because he loudly and profanely protested what he thought was the abusive conduct of the police. We cannot agree with this conclusion.
Reversed.
HUBBART, Judge (concurring).
I concur in the opinion and judgment of the court, but write separately to agree, as well, with Judge Cope's concurring opinion. Clearly, L.A.T.'s loud and profane words under the circumstances of this case (1) did not inflict injury or tend to incite an immediate breach of the peace, and (2) did not falsely report some physical hazard so as to create a clear and present danger of bodily harm to others. Because these are the only two circumstances in which one may, consistent with the First Amendment, be found guilty of disorderly conduct under Section 877.03, Florida Statutes (1991), State v. Saunders, 339 So.2d 641 (Fla. 1976), L.A.T.'s delinquency adjudication for disorderly conduct must be reversed.
On this record, L.A.T.'s words were constitutionally protected by the First Amendment for the reasons stated in the court's opinion  although, as Judge Cope correctly observes, a different case would be presented if L.A.T. had physically interfered with the police officers in their arrest of L.A.T.'s companion or had screamed with such volume as to interfere with the officers' ability to communicate with one another, with witnesses, or with the arrestee. In that event, L.A.T. could properly be found guilty of violating Section 843.02, Florida Statutes (1991), as nothing in the First Amendment protects a person who, under the guise of verbally protesting another's arrest, interferes with a police officer's lawful arrest of a third party.
COPE, Judge (specially concurring).
I concur in the judgment but do not join the majority opinion.
In 1974 the United States Court of Appeals for the Fifth Circuit held the Florida disorderly conduct statute unconstitutional because, as interpreted by Florida courts in previous years, the statute was susceptible of application to speech protected by the First Amendment. Wiegand v. Seaver, 504 F.2d 303 (5th Cir.1974), cert. denied and appeal dismissed, 421 U.S. 924, 95 S.Ct. 1650, 44 L.Ed.2d 83 (1975). In so doing the Fifth Circuit noted that the Florida courts had not given the statute a definitive narrowing construction which would limit its application solely to unprotected expression. Id. at 306.
In response the Florida Supreme Court adopted a narrowing construction of the statute. State v. Saunders, 339 So.2d 641, 643 n. *219 6 (Fla. 1976). The Florida Supreme Court stated:
[W]e now limit the application of Section 877.03[, Florida Statutes,] so that it shall hereafter only apply either to words which "by their very utterance. . inflict injury or tend to incite an immediate breach of the peace," White v. State, 330 So.2d 3, 7 (Fla. 1976); see Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others. We construe the statute so that no words except "fighting words" or words like shouts of "fire" in a crowded theatre fall within its proscription, in order to avoid the constitutional problem of overbreadth, and "the danger that a citizen will be punished as a criminal for exercising his right of free speech." Spears v. State, 337 So.2d 977, 980 (Fla. 1976). With these two exceptions, Section 877.03 should not be read to proscribe the use of language in any fashion whatsoever. To this extent, we modify our previous decisions construing the statute.
339 So.2d at 644 (footnote omitted).[1]
In recognition of the foregoing authority, the State has argued on this appeal solely that the words used by L.A.T. were "fighting words." I agree that on the record made in this case, the words do not qualify as "fighting words."
It would be a different matter if L.A.T. had physically interfered with the work of the officers, in which case he could be charged under an appropriate statute. See § 843.02, Fla. Stat. (1993). Similarly, in my view L.A.T. could be charged under section 843.02 if he had positioned himself in proximity to the officers and then screamed so as to interfere with the ability of the officers to communicate with each other and with witnesses. See id.[2] Clearly, L.A.T. can be required to move away from where the officers are working, failing which L.A.T. would be chargeable under the obstruction statute.
The only argument offered by the State to sustain this appeal is that the words were "fighting words." That being so, we must reverse the adjudication of delinquency.
NOTES
[1] The record does not reveal the offense for which L.A.T.'s companion was arrested.
[2] Because one is privileged to resist peacefully an unlawful arrest, Lee v. State, 368 So.2d 395 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 349 (Fla. 1979), our conclusion that there was no disorderly conduct requires the reversal of the resisting arrest without violence finding as well.
[3] The state relies upon the police testimony that L.A.T. was "creating a scene that was gathered around the officer" and that "the scene was getting uncontrollable." There was no evidence, however, either that anyone in the crowd was "incited" by his words or that he himself took any non-verbal "action" at all. The officers were obviously using the word "scene" in the old-fashioned sense of "a public display of passion or temper." The American Heritage Dictionary 1160 (1979). The First Amendment does not permit the imposition of criminal sanctions for "making a scene."
[1] The statute was reenacted by Chapter 86-174, Laws of Florida. See id. § 2, at 1198.
[2] No argument has been made that L.A.T. was himself the subject of a lawful investigatory stop after the arrest of his companion.