THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALLENA JUSTUS, Defendant-Appellant.

First District (5th Division)   No. 77-928

Opinion filed February 3, 1978.

James J. Doherty, Public Defender, of Chicago (Terrance McQuigg and Andrew Kleczek, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of disorderly conduct in violation of section 193—1(a) of the Chicago Municipal Code (Chicago Municipal Code, ch. 193, §193, 1(a)) and fined $25.00. On appeal, she contends that her conduct does not fall within the purview of this ordinance.

At trial the following pertinent evidence was adduced.

*For the State*

*John Santopadre, Chicago Police Officer*

At about 2:15 p.m. on August 28, 1976, he noticed that a car was blocking the driveway at 1424 West Howard Street. He proceeded to write a ticket for the violation, when defendant approached him and informed him that both the vehicle and the driveway were hers. Because he had already begun writing the ticket, he told her he was required to issue it, but that she could appear in court. Defendant became hysterical and began yelling and screaming. "She caused a crowd to gather in the area and around the street." After trying to calm her, he finished writing the ticket and returned to his squad car across the street. Defendant followed him. After placing herself inside the open door, she repeatedly asked him to give her a pen so she could take down his name and star number. Because this information was on the ticket, he refused her requests. As she grabbed at the pen in his pocket, he grasped her arm and the pen broke. He then placed her under arrest.

*For Defendant*

*Allena Justus on her own behalf*

After observing Officer Santopadre ticketing her husband's car, she approached him and informed him that earlier that day another officer had told her to park in front of her driveway so other cars would not block it. Santopadre responded that she could not break the law either and wrote her a ticket. She then informed him that the other officer had also instructed her to take down the name and star number of any policeman ticketing her car. After telling her that this information was "on the car," Santopadre walked across the street to his vehicle. Although she followed him, she did not raise her voice or use profanity. Santopadre sat

in the front seat and the car door was open. She asked if she could use one of the three pens in his pocket Santopadre responded by· grabbing her arm and twisting it. He kept twisting her arm and put his hand on her neck. She began to cry. Finally, he placed her under arrest. At no time did she touch him.

She testified that as a result of this incident she suffered two broken toes and nerve damage to her neck requiring nine days in the hospital as well as 11 days of out-patient care.

She denied that Santopadre said that his name was on the ticket. Rather, she said the number of his car was on the ticket.

On cross-examination she admitted that she was aware that an officer's star number is on his badge. But she insists she did not have a chance to take the number down. She also acknowledged that she failed to ask her husband for a pen even though he was standing in the driveway. However, she knew he did not have one.

*Luther Justus*

He is defendant's husband. He approached Officer Santopadre and defendant after the officer had grabbed her arm. Although Santopadre said defendant had his pen, she did not. Nor was Santopadre's pocket torn.

*Arbutis Moorehead*

He corroborated defendant's version of what occurred. However, on cross-examination he admitted that defendant reached out for Officer Santopadre's pen, but that she never touched the officer.

OPINION

Defendant contends that her conviction must be reversed because her conduct did not fall within the purview of Chicago's disorderly conduct ordinance. (Chicago Municipal Code, ch. 193, §193—1(a).) Specifically, she argues that the State failed to prove she: (1) acted unreasonably, and (2) caused a breach of the peace.

Section 193—1(a) of the Municipal Code of the City of Chicago (Chicago Municipal Code, ch. 193, §193—1(a)) provides that:

"A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace; * * *."

■■ Arguing with a police officer, even if done loudly, will not of itself constitute disorderly conduct. (*People v. Douglas* (1975), 29 Ill. App. 3d 738, 742, 331 N.E.2d 359, 363.) Here, even if we accept Officer Santopadre's version, it only establishes that defendant argued with Santopadre and reached for his pen. This conduct, while perhaps imprudent does not amount to disorderly conduct. As this court stated in

*Oratowski v. Civil Service Com.* (1954), 3 Ill. App. 2d 551, 561, 123 N.E.2d 146, 151:

> "An officer of the law must exercise the greatest degree of restraint in dealing with the public. He must not conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct."

See also *People v. Slaton* (1974), 24 Ill. App. 3d 1062, 1064, 322 N.E.2d 553, 554; *Landry v. Daley* (N.D. Ill. 1968), 288 F. Supp. 183, 187.

While arguing with a police officer is one factor to be considered, culpability is also dependent upon the surrounding circumstances. (*City of Chicago v. Wender* (1970), 46 Ill. 2d 20, 262 N.E.2d 470.) Accordingly, this ordinance has been construed to prohibit only that conduct tending to cause public disorder. *City of Chicago v. Blakemore* (1973), 15 Ill. App. 3d 994, 305 N.E.2d 687.

Although as the State argues, defendant's conduct here may have been intemperate, unreasonable and unjustified, there is no proof that her actions caused public disorder. The only reference at trial to a public disorder was the officer's testimony that defendant "caused a crowd to gather in the area and around the street." However, abusive language does not evolve into a crime simply because persons nearby stop, look and listen. *People v. Douglas* (1975), 29 Ill. App. 3d 738, 742-43, 331 N.E.2d 359, 363.

■■ Because there is no proof that defendant's conduct caused public disorder we must reverse. (*People v. Gentry* (1977), 48 Ill. App. 3d 900, 363 N.E.2d 146.) However, in reversing defendant's conviction we do not condone her abusive manner in objecting to the police officer's performance of his duties in issuing a ticket for a parking violation. While a police officer is required to exercise restraint in dealing with the public (*Landry v. Daley* (N.D. Ill. 1968), 288 F. Supp. 183, 187) that restraint does not give the public a right to abuse a police officer. If defendant had a grievance she should have sought remedy by registering a complaint with Santopadre's superiors or in the courts. The record is devoid of any evidence that the police officer was abusive, rude or lacking in restraint. Nevertheless, despite our feelings about her behavior, it does not change the fact that her conduct did not fall within the purview of the City's disorderly conduct ordinance. We, therefore, reverse her conviction.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

SULLIVAN, P. J., and MEJDA, J., concur.