# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-2674

BARBARA PAYNE,

*Plaintiff-Appellant,*

v.

MICHAEL PAULEY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CV 3266—**Charles R. Norgle, Sr.**, *Judge.*

———————

ARGUED APRIL 4, 2003—DECIDED JULY 9, 2003

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Upon learning that her fifteen-year-old son had crashed a truck into a house, Barbara Payne rushed to the scene of the accident. There she encountered Chicago Heights Police Officer, Michael Pauley. Both parties dispute what happened in the ensuing forty-five minutes, but at the end of the day, Payne had been arrested, handcuffed, and driven to the Chicago Heights police station. Payne alleges that Pauley violated 42 U.S.C. § 1983 by arresting her without probable cause and by using excessive force in carrying out her arrest. On Pauley's motion for summary judgment, the district court determined that, even construing the facts in the light most favorable to Payne, Officer Pauley had probable cause to ar-

rest Payne and used reasonable force in doing so. We do not believe, however, that the district court properly viewed the facts in the light most favorable to the nonmoving party, Payne, and consequently, we reverse the judgment of the district court.

## I.

On May 31, 1998, Kyle Payne drove his uncle's truck into a house in Chicago Heights. Officer Pauley was the first police officer to arrive on the scene of the accident. He determined that Kyle Payne was fifteen years old and unlicenced and consequently, he arrested him. By this time a crowd of between twenty and forty people had gathered in the yard of the house that had been hit by the vehicle. Shortly thereafter, a young man went to Barbara Payne's house, a half of a block away, and informed her that her son had been in an accident. Barbara Payne rode her bicycle to the scene of the accident. Eventually Payne was arrested, handcuffed, placed in a police car, and taken to the Chicago Heights police station where she was released a few hours later when a relative paid her bail. She later sought treatment for injuries she claimed she sustained during the arrest. Thus end the facts on which both parties agree. The majority of the dispute surrounds the events that occurred between the time Payne arrived on the scene of her son's accident and the time she was placed in the police car.

Before we can recite the remaining facts of the case, we must pause to make a legal determination regarding whose version of the facts we will credit. Payne recites the familiar language of summary judgment and asks us to view the facts and make all reasonable inferences that flow from them in the light most favorable to her, the party opposing summary judgment. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Officer Pauley, on the other hand, charts an unusual course for summary judgment. He be-

gins his statement of facts with the surprising admission that "[t]here are clearly two stories in the present case," and then proceeds to tell his version of the facts. This admission arouses attention because under the Federal Rules of Civil Procedure, a judge may grant summary judgment for a moving party only where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Ziliak*, 324 F.3d at 520. Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute.

On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. We must look therefore at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants. *Weeks v. Samsung Heavy Indus.*, 126 F.3d 926, 933 (7th Cir. 1997); *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997); *Wohl v. Spectrum Mfg.*, 94 F.3d 353, 358 (7th Cir. 1996); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). With these principles in mind,

we review the district court's grant of summary judgment *de novo. Ziliak*, 324 F.3d at 520.

Officer Pauley asks the court to credit his version of the facts over Payne's for two reasons. First, he claims that Payne's self-serving deposition testimony is without evidentiary support and insufficient to preclude summary judgment. Second, he asserts that her version of the facts is simply implausible and therefore she must come forward with more persuasive evidence to support her claim. At its core, Pauley's argument that Payne's deposition testimony is insufficient to defeat summary judgment is simply another way of saying that her testimony is not credible. Pauley is leading us into dangerous territory, and we have warned before of falling for the trap of weighing conflicting evidence during a summary judgment proceeding. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 655 (7th Cir. 2002), *cert. denied* 123 S. Ct. 1251, 1253, 1254 (2003). Of course Payne makes our task of suspending credibility determinations difficult by lodging some fairly outrageous accusations, including a claim that Officer Pauley broke her wrist and that three officers struggled over her arm for thirty minutes during the arrest. The former allegation she recants (*see* fn. 1, *infra*), and the latter is belied by the dispatch records which indicate that two of the arresting officers were on the scene for no more than seven minutes. *See* fn. 2, *infra*. Despite the difficulty, we will be true to our task on summary judgment and leave the credibility determinations for the factfinder below.

As for the legitimacy of Payne's deposition testimony as evidence, a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Payne sought to demonstrate that there was a genuine issue of material fact for trial by submitting excerpts from her deposition and

that of a witness to the events, Rasheedah Gray. There is certainly nothing wrong with Payne's deposition testimony on its face. The summary judgment rule itself contemplates that parties may submit deposition testimony as evidence for purposes of determining whether a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, **depositions**, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (emphasis supplied). *See also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (to ward off the grant of a summary judgment motion, the plaintiff can present deposition testimony demonstrating the existence of a genuine issue of material fact). We have routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion. *Wohl*, 94 F.3d at 358; *Courtney v. Biosound, Inc.* 42 F.3d 414, 418 (7th Cir. 1994); *Sarsha*, 3 F.3d at 1041; *Wilson v. Williams*, 997 F.2d 348, 351 (7th Cir. 1993); *Jackson*, 955 F.2d at 22.

There is nothing inherently more self-serving about Payne's deposition and that of her witness than Pauley's affidavit and those of his police officer witnesses. In any case, Payne "need not match [Pauley] witness for witness" or affidavit for affidavit, nor must she "persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge*, 24 F.3d at 921.

The defendant points to a number of cases from this Circuit for the proposition that self-serving, uncorroborated, and conclusory statements in testimony are insufficient to defeat a motion for summary judgment. (Response Brief of Defendant-Appellant at 15) (citing *Weeks*, 126 F.3d at 939; *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 446 (7th

Cir. 1997); *Filippo v. N. Ind. Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1998); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993)). It is not the self-serving nature of the affidavits, however, that sealed their fate in these cases. After all, most affidavits submitted for these purposes are self-serving. Instead, these affidavits fail to thwart summary judgment because they are not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge"), and by Federal Rule of Evidence 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Furthermore, although personal knowledge may include reasonable inferences, those inferences must be "grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc).

In the cases that the defendant cites—and in many employment discrimination cases for that matter—the plaintiff unsuccessfully attempts to thwart summary judgment by speculating as to the defendant/employer's state of mind. *See Filippo*, 141 F.3d at 750 (employee's speculation that union retaliated against her for running for local union president not sufficient to create genuine issue of material fact to defeat summary judgment motion); *Cowan*, 123 F.3d at 444 (perpetually tardy employee could not defeat motion for summary judgment with mere inference that termination was due to racial animus rather than record of tardiness); *Weeks*, 126 F.3d at 939 (employee's assumption that he would have lifelong employment could not defeat summary judgment where employment agreement and subsequent documents made clear that he was an at-will em-

ployee). *See also Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) (employee's subjective belief that she was terminated due to her age could not defeat summary judgment motion of employer who had concrete record of employee's poor work performance); *Cliff v. Bd. of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994) (terminated employee's conclusory assertions of race, age, and sex discrimination could not defeat motion for summary judgment where employer submitted numerous unsatisfactory performance evaluations).

In the other case cited by the defendants, *Edward E. Gillen Co.*, 3 F.3d at 192, the court was not faced with dueling affidavits or depositions as we are, but rather with the question of waiver. In *Edward E. Gillen*, the district court concluded that a construction company had conceded that all of its damages were delay damages by failing to clearly argue otherwise in its briefs. *Id.* at 195. On appeal the construction company attempted to demonstrate that it had preserved its claim by pointing to an affidavit that made the conclusory claim—without identifying any specific instances of damages—that some of its damages were unrelated to delay. *Id.* at 196. This claim failed, not because the affidavit was self-serving, but because the Federal Rules of Civil procedure require the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations, unsupported by specific facts, will not suffice. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In addition to lacking personal knowledge, the *Weeks* and *Fillipo* affidavits failed on the Rule 56(e) specificity requirement as well. Weeks' testimony failed to set forth any specific representations made by his employer from which a promise of lifetime employment could be inferred, and instead he referred only to the general idea that Asian tradition embraces lifetime employment. *Weeks*, 126 F.3d at 939. Fillipo claimed that her union refused to represent her

in her grievances, but she failed to allege with any specificity that she actually filed the necessary form to initiate union representation. *Filippo*, 141 F.3d at 749.

In this case in contrast, Payne's account is not based on speculation, intuition, or rumor. She has submitted a very detailed factual account of the incident based upon her first-hand experience with Officer Pauley. Those facts conflict with the facts presented by Officer Pauley. Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied. *Lujan*, 497 U.S. at 888.

Pauley also asserts that, because the factual context renders Payne's claims implausible, she must come forward with more persuasive evidence to support her claim than would otherwise be necessary. *See McDonnell v. Cournia*, 990 F.2d 963, 967 (7th Cir. 1993). There is nothing inherently implausible, however, in Payne's account. It may be less credible, perhaps, than Officer Pauley's claims, but as we discuss at length above, issues of credibility cannot be resolved at the summary judgment stage. Payne's claims are not so incredible or implausible that a reasonable jury could not find in her favor.

We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

In sum, in reviewing a motion for summary judgment where each party's testimony relays a different version of the facts, we must view those facts in the light most favorable to the party opposing the motion. As a result, we will

fill in the remainder of the relevant story with Payne's version of the facts, although we emphasize that in doing so, we do not vouch for their truth. *See Herzog v. Village of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002):[1]

When Payne arrived at the scene of the accident, she saw her son walking around in a circle, dazed and disoriented. A crowd of twenty-five to forty onlookers had gathered around the scene and appeared to Payne to be angry with Officer Pauley. Payne waited with her son Kyle next to Pauley's squad car. When he returned to the squad car, Pauley arrested Kyle, placed him in handcuffs, and put him in the back of the police car. Payne had no further contact with her son. After receiving permission from Officer Pauley, Payne retrieved her insurance information from the car and gave the information to the owner of the damaged property. It was at this point that the yelling began. Boiled

---

[1] We note that Payne's version of the facts has morphed through the course of litigation and is cast slightly differently in the Plaintiffs' Memorandum of Law in Response to Defendants' Motion for Summary Judgment, in the Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts That Require the Denial of Summary Judgment, and the Statement of Facts in Payne's brief on appeal. Since we are reviewing the district court's grant of summary judgment, we will view the facts as they were presented to the district court. For the most part, the various versions merely emphasize different aspects of the events and do not contradict each other, with one notable exception. In her Complaint, the plaintiff claimed to have suffered a fractured wrist as a result of the arrest. In her Local Rule 56.1(b)(3)(A) Response to the Defendant's Statement of Facts, the plaintiff admitted that she never, in fact, fractured her wrist. Plaintiff's Local Rule 56.1(b)(3)(A) Response to the Defendant's Statement of Facts at ¶24. Payne is admonished that, although for purposes of summary judgment we are viewing the facts in the light most favorable to her, if she is later found to have willfully misrepresented those facts, she will be heavily sanctioned.

down to the relevant facts, Payne claims that Officer Pauley lost his temper on three separate occasions during his time on the scene. During the first episode, Officer Pauley began to badger her while she went to retrieve the insurance information to give to the property owner and subsequently became irate and began yelling and screaming at her. His next eruption occurred when Payne, after seeking Officer Pauley's permission, unsuccessfully attempted to remove the truck from the bushes in front of the damaged house. According to Payne, she abandoned her attempt immediately upon discovering that the truck would not move off of the hedges and her actions caused no further damage to the property. Nevertheless, she claims that Pauley's torrent of abusive language, cursing, and racially derogatory comments swelled. During this time, Payne maintains that she did not argue back, did not swear, and did not raise her voice. She merely told Officer Pauley that his comments about African Americans were not true. At some point after she emerged from the truck, Pauley ran toward her and, by "hitting" his chest and stomach against her body, caused her to stumble backwards. Then, Pauley unsnapped his holster and held his balled fists over his head as if preparing to strike Payne. The crowd grew more hostile, yelling "hit her, hit her. If you hit her, you know you are going down." Pauley did not hit Payne with his fists, but announced to her that she was going to be arrested, to which Payne responded that she had no intention of running away. Pauley continued his barrage of derogatory statements. Payne merely turned her head.

At this point, two more police officers arrived on the scene. For approximately half an hour, Pauley and the assisting officers grappled over Payne's arm.[2] According to

---

[2]  According to police dispatch records submitted by the defendant on summary judgment, the assisting officers were on the scene

(continued...)

Payne, the struggle occurred not because she was resisting the arrest, but because the officers were arguing over who would handcuff her. Eventually Pauley grabbed her left arm, jerked it into handcuffing position, forced her arm behind her back, slammed the handcuff down on her wrist, jerked her wrist, and tightened the handcuffs until Payne could not feel her hands. Payne protested that the handcuffs were too tight, that she could not feel her hands, and that she was in pain, but the police officers did not loosen the handcuffs or remove them until she arrived at the police station. An officer at the police station filled out a physical examination form and noted that Payne complained that her left wrist and fingers were hurting and going numb.[3]

---

[2] (...continued)
for no more than six or seven minutes. Nevertheless, a jury is entitled to believe Payne's testimony over the dispatch records. We leave this issue of credibility to the jury.

[3] Of course Officer Pauley's story differs significantly. In his version he never hollered at Payne, never badgered her, swore at her, used derogatory language or hit or bumped her in any manner, never unsnapped his holster, never raised his fists or threatened to hit her, and did not yank her arm or otherwise treat Payne roughly while arresting her. Instead he claims that Payne screamed obscenities at him, disobeyed his orders to stay away from the squad car, and disobeyed his orders to stop trying to move the vehicle from the damaged property. He also claims that she incited the crowd and resisted arrest. As we have already concluded, we cannot choose the version of the story that seems more logical based on the pleadings and testimony before us. It is the task of the district court judge, and ours reviewing the motion *de novo,* to give Payne the benefit of the doubt. We have ignored certain facts from Payne's various iterations either because they are not relevant to the determination of the summary judgment motion or because the evidence is not admissible. Evidence presented to defeat a summary judgment motion need not be in admissible
(continued...)

Upon release, Payne sought treatment at a local emergency room where she was diagnosed with mild swelling and bruising, and later received treatment from various physicians for injuries resulting from the force used during her arrest. Payne underwent two surgical procedures to treat carpal tunnel injuries which she claims she sustained during the arrest. As of February 8, 2002, she was still unable to work due to her injuries.

After the arrest, Pauley signed a criminal complaint in which he averred that Payne knowingly obstructed his performance as a police officer. The complaint claimed that he asked Payne to move away from the car so that the tow truck could pull it from the house, but she refused.

## II.

Payne maintains that Officer Pauley violated her Fourth Amendment rights by arresting her without probable cause and by using excessive force in effectuating the arrest. Officer Pauley counters that he had probable cause to arrest Payne for obstructing a police officer or for disorderly conduct, and that he did not use excessive force in arresting her. Pauley argues, in the alternative, that even if he did not have probable cause to arrest Payne, as a government official performing discretionary functions, he was entitled

---

[3] (...continued)
form, but it must be admissible in content. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Consequently, Payne's attempts to describe the subjective feelings or motivations of Officer Pauley cannot be credited. *See Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) (plaintiffs statements regarding what they "felt to be the case" not admissible evidence in opposition to motion for summary judgment).

to qualified immunity on both the arrest claim and the excessive force claim.

To determine whether Officer Pauley is entitled to qualified immunity, we must first ask whether the facts alleged, taken in the light most favorable to Payne, show that Officer Pauley violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). If so, we must then ask whether the right was clearly established at the time of the alleged injury. *Saucier*, 533 U.S. at 201; *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003). The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted. *Saucier*, 533 U.S. at 202. We will evaluate each of Payne's claims using this two-step process, bearing in mind that the doctrine of qualified immunity leaves "ample room for mistaken judgments" by police officers. *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

We begin with Payne's claim that Officer Pauley lacked probable cause to arrest her and therefore violated her Fourth Amendment rights. In order to have probable cause for an arrest, law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense. *United States v. Hayes*, 236 F.3d 891, 894 (7th Cir. 2001). The test is an objective one and evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if the reasonable belief of that officer is ultimately found to be incorrect. *Kelly v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998).

Officer Pauley claims that at the time of the arrest he reasonably believed that Payne was obstructing his duties as a police officer. Under Illinois law, it is unlawful to

"knowingly resist[ ] or obstruct[ ] the performance by one known . . . to be a peace officer." 720 ILCS 5/31-1. It is well settled under Illinois law—and was well settled at the time of Payne's arrest—however, that the resistance must be physical; mere argument will not suffice. *People v. Weathington*, 411 N.E.2d 862, 863-64 (Ill. 1980); *People v. Raby*, 240 N.E.2d 595, 599 (1968); *People v. Long*, 738 N.E.2d 216, 222 (Ill. App. 2000); *People v. Martinez*, 717 N.E.2d 535, 538 (Ill. App. 1999); *People v. Hilgenberg*, 585 N.E.2d 180, 183 (Ill. App. 1991); *Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995)(collecting cases). In fact, the First Amendment protects even profanity-laden speech directed at police officers. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Police officers reasonably may be expected to exercise a higher degree of restraint than the average citizen and should be less likely to be provoked into misbehavior by such speech. *Id.* at 462.

In evaluating whether Pauley had probable cause to arrest, the district court concluded that Payne engaged in obscenity-laced argument with Officer Pauley, incited the crowd, refused to follow Pauley's instructions by attempting to enter his squad car, and attempted to move the truck after he had instructed her not to do so. (Order at 8-10). In coming to these conclusions, the district court failed to view the facts in the light most favorable to Payne. In fact, Payne denies each of these facts and asserts that she did not shout or swear at Officer Pauley; she did not attempt to speak to her son once he was placed in the police car; she did not disobey any orders from Officer Pauley regarding moving the truck; and she did not resist arrest, or incite the crowd.[4] It is true that Rasheedah Gray, a witness produced

---

[4] The district court interpreted Payne's statement that she "defended herself using her free speech rights" (See Defendant's Motion for Summary Judgment, Ex. C at p. 62) as an admission

(continued...)

by Payne, corroborated some of Officer Pauley's claims, in particular, the claim that Payne swore at Officer Pauley, argued with him, and that she made it difficult for him to arrest her. The court cannot impute Gray's rendition of the facts to Payne simply because Payne was the one to identify Gray as a witness. We must consider the facts in the light most favorable to Payne, and based on the facts recited by Payne, Officer Pauley could not have reasonably believed that he had probable cause to arrest Payne for obstructing a police officer. Of course if a judge or jury determines that Payne misrepresented the facts, not only must the court's conclusions change accordingly, but Payne will be subject to sanctions as well.

Officer Pauley claims that even if he did not have probable cause to arrest Payne for obstructing a police officer, he had probable cause to arrest her for the related offense of disorderly conduct. In Illinois, a person commits the misdemeanor of disorderly conduct if "he knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace; . . ." 720 ILCS 5/26-1(a)(1).[5]

Again, we must credit Payne's version of the facts in which she claims that she did not argue with Pauley, she did not swear at him, did not yell, and she did not goad the

---

[4] (...continued)
that she argued with Pauley. Order at 8. Payne denies having argued with Pauley and certainly could have used her "free speech rights" to communicate with Pauley in a non-combative manner. In fact, Pauley claims that she merely responded to his racial insults by saying "[n]o, that's not true." (Defendant's Motion for Summary Judgment, Ex. C at p. 62). Furthermore, even if she had used her "free speech rights" to argue with Pauley, as described above, it is well established under Illinois law that mere argument with a police officer does not constitute obstruction.

[5] The other sections of the statute are not relevant in this case.

crowd. Given these facts, Officer Pauley had no probable cause to arrest Payne for disorderly conduct. Even had Payne argued with Officer Pauley, Illinois courts have time and again held that arguing with a police officer, even if done loudly, or with profane or offensive language, will not in and of itself constitute disorderly conduct. *People v. Trester*, 421 N.E.2d 959, 960-61 (Ill. App. 1981); *People v. Justus*, 372 N.E.2d 1115, 1117 (Ill. App. 1978); *People v. Gentry*, 363 N.E.2d 146, 150 (Ill. App. 1977); *People v. Douglas*, 331 N.E.2d 359, 363 (Ill. App. 1975); *City of Chicago v. Blakemore*, 305 N.E.2d 687, 689 (Ill. App. 1973). Police officers must be more thick skinned than the ordinary citizen and must exercise restraint in dealing with the public. They "must not conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct." *Justus*, 372 N.E.2d at 1117 (internal citation omitted). Furthermore, arguing with a police office does not evolve into disorderly conduct merely because a crowd gathers to watch the argument. *Id.* at 1118; *Douglas*, 331 N.E.2d at 363; *Gentry*, 363 N.E.2d at 150. Of course the argument is only one factor to be considered; the nature of the surrounding circumstances may also come into play. *Justus*, 372 N.E.2d at 1117; *Gentry*, 363 N.E.2d at 150; *Douglas*, 331 N.E.2d at 363; *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1998). According to the facts, as passed through our summary judgment filter, it was Officer Pauley and not Payne who incited the crowd by mistreating Kyle Payne and using derogatory language. It would be inherently unfair if an officer could rile up a crowd by mistreating a citizen in front of the crowd, and then could arrest that citizen for creating the disturbance. In short, there are questions of material fact regarding the demeanor of the crowd and the threat to public order. *See, e.g., Kies v. City of Aurora*, 156 F. Supp. 2d 970, 985 (N.D. Ill. 2001) (dispute over the status of the crowd and the threat to public order precluded a determination of whether plaintiff's actions threatened a

breach of the peace and consequently whether the police officer was entitled to qualified immunity, therefore precluding a grant of summary judgment). Based on Payne's facts, Pauley had no probable cause to arrest Payne. Because we find that Officer Pauley had no probable cause to arrest Payne for disorderly conduct, we need not decide whether the district court's use of the related offense doctrine was appropriate.

Payne has successfully passed the first hurdle of the qualified immunity test: taking the facts in the light most favorable to her, she has shown that Officer Pauley violated her Fourth Amendment rights by arresting her without probable cause. Officer Pauley is immune from suit, however, if those rights were not clearly established at the time of her arrest such that it would have been clear to a reasonable officer that Pauley's conduct was unlawful. *Saucier*, 533 U.S. at 202. According to Payne's rendition of the facts, she did not argue, swear, incite, obstruct, or resist. Based on these facts, no reasonable officer could have concluded that she was obstructing a police officer or engaged in disorderly conduct. Officer Pauley is not entitled to qualified immunity for arresting Payne without probable cause.

Turning now to Payne's excessive force claim, we analyze allegations that police officers used excessive force under the Fourth Amendment and its reasonableness requirement. *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002). A court determines whether an officer has used excessive force in effectuating an arrest based on a standard of "objective reasonableness," that is from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). A police officer's use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). The inquiry is

fact specific and balances the intrusion on the individual against the governmental interests at stake. The specific facts a court should consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Again, the district court erred by crediting Officer Pauley's version of events when considering the excessive force claim. The district court considered the reasonableness of the force used in light of the fact that Payne had argued with and directed profanities against Pauley, refused to obey his orders, agitated the crowd, and resisted arrest. (Order at 11, 14-15). But these are not facts viewed in the light most favorable to Payne. Payne, in fact, denies each one. The district court also chose to believe that the handcuffing procedure lasted only a few minutes, as Officer Pauley alleged, rather than the thirty minutes that Payne alleged. Furthermore, in considering the severity and source of Payne's injuries, the court below credited the testimony of Pauley's medical expert over Payne. It is the job of the jury, and not the district court judge at summary judgment, to determine which party's evidence to credit. *See Wilson*, 997 F.2d at 350 ("[a]lthough a factfinder might ultimately give more weight to the opinion of a physician than to a pre-trial detainee and another inmate, to make that decision at the summary judgment stage usurps the role of the factfinder.")

Payne alleges that Pauley unsnapped his holster and held his arms over his head as if to strike her and that he ran at her knocking into her body with his stomach and chest. She also alleges that, although she volunteered to be arrested, Officer Pauley fought with the other officers over Payne's arm for thirty minutes, eventually forcing her arms behind her back, twisting her arm, and over-tightening the handcuffs. As a result of the handcuffing incident and the way

the officers fought over her arm, she alleges she received significant injuries.

The Supreme Court has noted that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Nevertheless, even given this flexibility, Officer Pauley's force in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable. *See Herzog*, 309 F.3d at 1042-43 (refusing to loosen plaintiff's chafing handcuffs constitutes excessive force in case where complainant had violated no law, was arrested without probable cause and did not resist); *Brown v. Vill. of Evergreen Park*, No. 02 C 0236, 2002 WL 31844991, at *4 (N.D. Ill. Dec. 18, 2002) (defendant alleged sufficient facts to support a claim of excessive force where he was stopped for no reason, did not resist arrest, was completely submissive and yet handcuffs applied so tightly he suffered nerve damage);[6] *see also, Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th

---

[6] At oral argument, counsel for Payne asked us to clarify the rule in this Circuit for citing unpublished district court opinions. Although, as Payne's counsel noted, our opinions have been less than consistent regarding this issue, our Circuit Rule has remained consistent and clear and states as follows: "[e]xcept to the purposes set forth in Circuit Rule 53(b)(2)(iv), no unpublished opinion or order of any court may be cited in the Seventh Circuit if citation is prohibited in the rendering court." Circuit Rule 53(e). As there is no rule in the Northern District of Illinois barring citations to unpublished opinions (*see Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 959, n.1 (N.D.

(continued...)

Cir. 2002) (whether police used excessive force was issue for jury where handcuffs were so tight that plaintiff sprained wrist, shoulder, and elbow, where plaintiff had committed no offense, he posed no safety threat, and made no show of resistance); *Mickle v. Morin*, 297 F.3d 114, 121-22 (2d Cir. 2002) (holding that rational juror could find use of force excessive where handcuffing caused bruising and dislocated rotator cuff and plaintiff's only offense was making non-emergency calls to 911); *Kostrzewa v. City of Troy*, 247 F.3d 633, 640-41 (6th Cir. 2001) (refusing to dismiss excessive force complaint where plaintiff was arrested for making an illegal left-hand turn and application of handcuffs made wrists swollen, red, and painful); *LaLonde v. County of Riverside*, 204 F.3d 947, 959-60 (9th Cir. 2000) (allowing issue of excessive force to go jury where officers responding to noise complaint applied tight handcuffs and used pepper spray); *Heitschmidt v. City of Houston*, 161 F.3d 834, 838-40 (5th Cir. 1998) (holding that, on the basis of the pleadings, the court could not conclude that the force exerted was reasonable where the police officer placed the plaintiff in tight handcuffs for four and a half hours, where plaintiff was not a target of the investigation, he did not attempt to flee, and police had no reason to suspect him of wrongdoing).

Having established the threshold question regarding the constitutional right under the Fourth Amendment, we must now complete the qualified immunity inquiry by determining whether it would have been sufficiently clear to a reasonable officer that he used excessive force in the situation he confronted. At the time of the arrest, it was clearly established that "police officers do not have the right to shove,

---

[6]  (...continued)
Ill. 2000)), nothing would prohibit a litigant from citing these unpublished district court opinions in this Court.

push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). It was also well established that it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes. *See Hill v. Miller*, 878 F. Supp. 114, 116-17 (N.D. Ill. 1995) (denying summary judgment on excessive force claim where police officer pushed complainant against police car and handcuffed him so tightly that he suffered nerve damage where suspect violated no law, complied fully with officer's instructions, and did not resist arrest); *Ingram v. Jones*, No. 95 C 2631, 1995 WL 745849, at *11 (N.D. Ill. Nov. 29, 1995) (denying defendants' motion to dismiss excessive force claim where woman alleged that police officer forcefully grabbed and handcuffed her where she had committed no crime, did not resist, and fully complied with all of the officer's requests), *modified on other grounds by* No. 95 C 2631, 1997 WL 323538 (N.D. Ill. June 9, 1997); *Tennen v. Shier*, No. 94 C 2127, 1995 WL 398991, at *7 (N.D. Ill. June 30, 1995) (reasonable factfinder could find officer used excessive force in grabbing complainant's arm, and yanking him around by the arm, where he had violated no law and posed no physical threat to the officer); *see also Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997) (though amount of force used was allegedly greater than in instant case, stating that overly tight handcuffing constitutes excessive force); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (refusing to grant summary judgment for police officers where tight handcuffs caused pain and bruising and plaintiff passed field sobriety tests and had violated no law).

It is true, as Pauley points out in his brief, that there are other cases in which courts have not found that the application of tight handcuffs constituted excessive force, but after

reviewing those cases we find that the factual scenarios are distinguishable either because the subject resisted arrest, failed to obey orders, was accused of a more serious or violent crime, or because the officers used far less force than Payne alleges.

In this case, according to Payne's account, Officer Pauley confronted a woman who posed no danger to Officer Pauley or to the public, who did not resist arrest, and who was alleged to have committed a very minor, non-violent crime. If the facts as alleged by Payne are found to be true, then and only then, should it have been clear to Officer Pauley, or to any reasonable officer under these circumstances, that it would be unlawful to use the amount of force he did to arrest Payne.

## III.

At this juncture we must accept the facts in the light most favorable to Payne, although we emphasize that if a factfinder concludes that the events at issue did not occur as Payne alleges, our provisional conclusions regarding probable cause to arrest and use of excessive force cannot stand. Nevertheless, because we find that there are genuine issues of material fact that cannot be resolved in a summary judgment proceeding, we reverse the district court's grant of Officer Pauley's motion for summary judgment

REVERSED.

A true Copy:

     Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*