UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2006[*]
Decided November 13 , 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-2519

| | |
|---|---|
| JAMES E. McROY, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Northern |
| | District of Illinois, Eastern Division |
| *v.* | |
| | No. 03-C-6756 |
| MICHAEL SHEAHAN, et al., | |
| *Defendants-Appellees.* | Ruben Castillo, |
| | *Judge.* |

## O R D E R

James McRoy brought this suit under 42 U.S.C. § 1983, alleging that the Cook County Department of Corrections (CCDOC) infringed upon his First and Fourteenth Amendment rights to freely exercise his Muslim faith while he was incarcerated. The district court granted summary judgment for the defendants, and we affirm.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Between August 2003 and September 2004, the time frame of McRoy's complaint, the CCDOC instituted a religious services schedule for security purposes, so that it could control the times when outside ministers entered the prison and also prepare proper measures for prisoner gatherings. The schedule allotted time for Muslim services every Monday, Wednesday, and Saturday. Some of the Muslim services, however, were canceled. The CCDOC canceled services if a imam, or Muslim minister, did not come to the prison to lead the service. The CCDOC also cancelled services for security concerns when it was short-staffed and did not have the personnel to safely transport prisoners and supervise gatherings. Lastly, the CCDOC cancelled services when the prison was on lockdown, a time when movement within the prison was kept to a minimum so that personnel could thoroughly search the premises to locate security breaches and uncover contraband. Under these three circumstances, all services of all faiths were cancelled.

Sometimes, however, McRoy was prohibited from attending a service even when it was not cancelled. The CCDOC had a policy of not mingling prisoners from different "pods" (smaller units of cells into which each of the CCDOC's divisions is further divided). Indeed, it used the pods to keep certain groups apart from one another to avoid altercations. The CCDOC also avoided the congregation of too large a group of prisoners because of the difficulty in controlling them all. Therefore, only one pod at a time was allowed to attend any event, whether it was religious or not and without regard to denomination. Even with this restriction, if two imams arrived to conduct services, they could accommodate all four pods in McRoy's division in the allotted time frame. Certain pods were prohibited from attending services only on days when just a single imam was available. As an additional security measure, the CCDOC strip-searched all prisoners leaving their pods for any reason, in order to control the movement of contraband and weapons throughout the prison. Attendees of any religious service were subject to the searches. In addition to allowing services for inmates, the CCDOC also had learning and religious "tiers" to which prisoners could apply in order to focus on faith or reading during their incarceration. These areas were non-denominational and open to all prisoners including McRoy. Prisoners were allowed to keep religious material in their cells, and all ministers were allowed to bring religious material for distribution to prisoners.

On appeal, McRoy essentially renews the arguments he made in the district court and asserts generally that unspecified material facts remain in dispute, and that his claims should be allowed to proceed to trial. McRoy reiterates that the CCDOC infringed upon his free exercise rights by canceling Muslim services at the prison, limiting the times and frequency of Muslim services, limiting the number of prisoners who can attend each service, strip-searching attendees of Muslim services, restricting the ability of imams to bring publications to the prisoners, and not having a Muslim-specific living area within the prison.

Although we take the facts in the light most favorable to McRoy, his conclusory denials of the defendant's facts and his own conclusory allegations unsupported by specific facts will not suffice. *See Payne v. Pauley*, 337 F.3d 767, 770, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). McRoy's claims fail for substantially the same reasons expressed in the district court's thorough thirty-page opinion. In considering the cancellations and limitations of Muslim services and the strip-searches, the district court applied the standards set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 64-85, 89 (1987), and this court in *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir. 1987), and correctly held that the CCDOC had a legitimate security justification for any infringement on McRoy's exercise of his faith. McRoy has not pointed to anything in the record to suggest that the CCDOC's asserted security reasons were pretextual or that the measures were applied in a discriminatory manner. The district court's opinion also properly notes the lack of evidence in the record to support McRoy's claims that imams are prevented from providing prisoners with religious materials or that adherents of any other faith enjoy faith-based religious living units or learning resources that are denied to Muslims.

Accordingly, the decision of the district court is AFFIRMED.